Jayedeane THOMPSON, Plaintiff–Appellee, Cross–Appellant,

v.

AMERICAN HOME ASSURANCE COMPANY, Defendant–Appellant, Cross–Appellee.

Nos. 94–6288, 94–6331.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 29, 1996.

Decided Sept. 11, 1996.

Jerry M. Miniard (argued and briefed), Starke & Combs, Florence, KY, for Plaintiff–Appellee, Cross–Appellant.

Joshua J. Kancelbaum (argued and briefed), Chesterland, OH, for Defendant–Appellant, Cross–Appellee.

Before: KEITH and SILER, Circuit Judges; GIBBONS, Chief District Judge.*

GIBBONS, Chief District Judge.

These cross-appeals, arising out of the award of benefits under an accidental death benefit insurance policy, present questions of whether the district court properly set aside a default judgment against the insurance company and whether it subsequently erred in granting summary judgment for the beneficiary of the policy.

Appellant and cross-appellee American Home Assurance Co. ("American Home") issued a group Accidental Death and Dismemberment Insurance Policy to employees of Burns International Security Systems, Inc. ("Burns"). Robert Thompson voluntarily purchased the policy as a Burns employee. The beneficiary of the policy in the event of Thompson's death was his ex-wife, appellee and cross-appellant Jayedeane Thompson ("Thompson"). While covered by the policy, Robert Thompson died as a result of autoerotic asphyxiation. American Home appeals the district court's grant of summary judgment to Jayedeane Thompson. Thompson cross-appeals from the lower court's order setting aside a default judgment against American Home and from the district court's ruling that the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, rather than Kentucky law governed the resolution of the cross-motions for summary judgment. We conclude that the district court's decision to set aside the default judgment was not in error, but vacate the district court's order granting summary judgment, since a genuine issue of material fact exists as to whether the policy at issue was part of an "employee welfare benefit plan" as defined by ERISA and its implementing regulations. The pivotal factual question is whether Burns endorsed the policy within the meaning of the safe harbor provisions of 29 C.F.R. § 2510.3–1(j).

The record on the summary judgment motions establishes the following relevant facts and procedural history. With regard to the policy under which Thompson claims benefits, the record reveals that Burns' personnel administrator gave new employees information regarding the policy, including a brochure which bore Burns' company name on the front cover. Each new employee decided whether to enroll in the policy, and, if he or she chose to do so, returned an enrollment card to the administrator, who entered the information into a computer system so that payroll deductions could be made. The employee paid for the coverage, without any contribution from Burns. Further, Burns received no compensation for its role in enrolling employees into the policy, other than reimbursement for administrative costs. Burns apparently was not responsible for processing or denying claims arising under the policy, which was the function of the underwriter, American Home.

Robert Thompson died on April 14, 1992, and thereafter, Jayedeane Thompson filed her claim for accidental death benefits with American Home. On October 30, 1992,

---

* The Honorable Julia S. Gibbons, Chief United States District Judge for the Western District of Tennessee, sitting by designation.

American Home denied her claim, explaining that the policy "does not cover any loss to an insured person caused by or resulting from suicide, attempted suicide or intentionally self-inflicted injury." Thompson appealed administratively, urging that the death was accidental, and citing the coroner's report which found the cause of death to be "accidental asphyxiation due to constriction of the neck." When her appeal was denied, Thompson filed suit against American Home in federal court.

Thompson originally alleged jurisdiction under ERISA. Unable to locate American Home's agent for service of process, she sought to effect service by serving the Secretary of Labor, pursuant to 29 U.S.C. § 1132(d)(1), which provides that when a suit is brought against an ERISA plan, service is deemed to have been effective when made on the Secretary. American Home failed to answer and, accordingly, the court clerk entered default on May 13, 1993, pursuant to Federal Rule of Civil Procedure 55. On June 4, 1993, the court entered a judgment on the default against American Home in the amount of $100,000.00.

On June 15, 1993, American Home moved for relief from judgment under Federal Rule of Civil Procedure 60(b), asserting that the default judgment was void due to failure to effect service and that it therefore should be set aside. American Home further asserted that it was not culpable in the entry of default in that it was never notified of the pendency of the suit and that it had a meritorious defense. The district court set aside the default judgment on August 27, 1993.

On May 31, 1994, Thompson, with leave of court, amended her complaint to allege that jurisdiction was properly based on diversity of citizenship and that Kentucky state law rather than ERISA common law governed. In response, American Home filed a motion for partial summary judgment on the issue of governing law and a motion for summary judgment on the merits. Thompson filed a cross-motion for summary judgment on the merits. The district court disposed of the case in its entirety, in a September 12, 1994 order, finding (1) that ERISA and hence federal common law governed the disposition of this case since the policy was part of an ERISA-regulated "employee welfare benefit plan," and (2) that American Home had improperly construed the terms of the benefit plan and that judgment should be entered in favor of Thompson. These appeals followed.

## I. Setting Aside the Default Judgment

■ Thompson initially argues that the district court erred in setting aside the June 4, 1993, default judgment against American Home. This court reviews a district court's decision to set aside a default judgment for abuse of discretion. *Amernational Indus., Inc. v. Action–Tungsram, Inc.,* 925 F.2d 970, 975 (6th Cir.), *cert. denied,* 501 U.S. 1233, 111 S.Ct. 2857, 115 L.Ed.2d 1024 (1991); *Davis by Davis v. Jellico Community Hospital, Inc.,* 912 F.2d 129, 132–33 (6th Cir.1990); *Marshall v. Monroe & Sons, Inc.,* 615 F.2d 1156, 1160 (6th Cir.1980). For the following reasons, the court determines that the default judgment was properly set aside under the governing Federal Rules of Civil Procedure.

■ Federal Rule of Civil Procedure 55 governs defaults and provides that

> For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

In making the equitable determination of "good cause" required by Rule 55, the court is required to consider (1) whether the entry of default was the result of willful or culpable conduct; (2) whether a set-aside would prejudice the plaintiff; and (3) whether the defenses raised following the entry of default are meritorious. *See United Coin Meter Co., Inc. v. Seaboard Coastline R.R.,* 705 F.2d 839, 844 (6th Cir.1983) (citing *Keegel v. Key West & Caribbean Trading Co., Inc.,* 627 F.2d 372, 373 (D.C.Cir.1980) and *Feliciano v. Reliant Tooling Co., Ltd.,* 691 F.2d 653, 656 (3d Cir.1982)).

■ Where a court has entered judgment on a default, however, as it did here, Rule 55 states that a court may set aside that judgment only in accordance with the grounds laid out in Rule 60(b). Fed. R. Civ. Pro. 55(c). *See Waifersong Ltd., Inc. v.*

*Classic Music Vending,* 976 F.2d 290, 292 (6th Cir.1992) ("[A] stricter standard applies for setting aside a default once it has ripened into a judgment."); *INVST Financial Group, Inc. v. Chem–Nuclear Systems, Inc.,* 815 F.2d 391, 398 (6th Cir.1987) ("A default can be set aside for 'good cause shown,' but a default that has become final as judgment can be set aside only under the stricter Rule 60(b) standards for setting aside final, appealable orders."), *cert. denied,* 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987). Rule 60(b) provides in pertinent part that

> (b) ... On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... (4) the judgment is void; ... or (6) any other reasons justifying relief from the operation of the judgment.

Fed. R. Civ. Pro. 60. Where Rule 60(b) is invoked to set aside a default judgment, the court must both consider the Rule 55 equitable factors as enumerated in *United Coin Meter,* 705 F.2d at 845, and find that one of the specific requirements of Rule 60(b) is met. *Manufacturer's Indus. Relations Ass'n v. East Akron Casting Co.,* 58 F.3d 204, 209 (6th Cir.1995); *Waifersong,* 976 F.2d at 292.

Invoking these standards, the district court found that setting aside the default judgment was warranted for two reasons. First, the court held that the default judgment against American Home was void under Rule 60(b)(4), since the court lacked jurisdiction to enter judgment due to a failure to obtain service of process. In reaching this result, the court found that plaintiff's attempt to serve American Home by serving the Secretary of Labor under 29 U.S.C. § 1132(d)(1) was ineffective, since that section only allowed service on the Secretary when a plan was being sued as an entity, and not when, as here, the insurer was being sued. Second, the district court held that Rule 60(b)(1) and/or Rule 60(b)(6) counseled in favor of setting aside the default.

■ On review, this court finds that the district court did not abuse its discretion in setting aside the default judgment against American Home. Rule 60(b)(1) allows the court to set aside a judgment in cases of "mistake, inadvertence, surprise or excusable neglect," and Rule 60(b)(6), which allows the court to set aside a judgment for "any other reasons justifying relief," applies in "exceptional or extraordinary circumstances which are not addressed in the first five numbered sections of the rule." *See Olle v. Henry & Wright Corp.,* 910 F.2d 357, 365 (6th Cir. 1990); *Hopper v. Euclid Manor Nursing Home, Inc.,* 867 F.2d 291, 294 (6th Cir.1989). American Home clearly established surprise, as its agent attested that American Home was unaware that a lawsuit had been filed until after the default judgment had been entered. Assuming *arguendo* that service of process on the Secretary of Labor was acceptable in these circumstances, the lack of actual notice of a lawsuit is a sufficient reason for the district court to set aside a judgment under Rule 60. *See Rooks v. American Brass Co.,* 263 F.2d 166, 168 (6th Cir.1959) (per curiam) (where process was properly served at defendant's residence but was never received by the named defendant but rather was passed by his wife to his business manager, who mistook it for a suit involving defendant's corporation, default judgment was properly set aside).

■ Furthermore, the district court properly considered the equitable factors laid out in *United Coin Meter,* 705 F.2d at 844. First, the court determined that American Home was not culpable. "To be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on judicial proceedings." *INVST Financial Group,* 815 F.2d at 399. American Home demonstrated no such intent or disregard. *See Shepard Claims Serv., Inc. v. William Darrah & Assocs.,* 796 F.2d 190, 194 (6th Cir.1986) ("Where the defaulting party and counsel have not shown disrespect for the court, or have given evidence of respect for the court's process by their haste in acting to set aside the default, the courts have been inclined towards leniency."). Second, for the setting aside of a default judgment to be considered prejudicial, it must result in more than delay. Rather, the delay must result in tangible harm such as loss of

evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion. *INVST Financial Group*, 815 F.2d at 398. The court found no indication of this sort of prejudice. Third, in order to establish a "meritorious defense," the defendant must state "a defense good at law" which is sufficient if it contains "even a hint of a suggestion which, proven at trial, would constitute a complete defense." *Id.* at 398–99. Again, the court found that American Home met this standard.

The district court clearly did not abuse its discretion in setting aside the default judgment against American Home and thus allowing this case to proceed on the merits. *See Rooks*, 263 F.2d at 169 ("Any doubt should be resolved in favor of the petition to set aside judgment so that cases may be decided on their merits.") (internal citations omitted). Accordingly, the district court's order setting aside the default judgment is AFFIRMED.

## II. Ruling on the Summary Judgment Motions

The appeals from the district court's ruling on the cross-motions for summary judgment raise the threshold issue of whether the district court correctly concluded that the policy under which Thompson claims benefits was an ERISA plan and hence that Thompson's claim was properly governed by the federal common law of ERISA. Because we conclude that a genuine issue of fact exists as to whether the policy was an ERISA plan, it is unnecessary to reach any issue with respect to interpretation of the plan.

The Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), is a comprehensive federal law governing employee benefits. ERISA regulates, *inter alia*, employee benefit plans that "through the purchase of insurance or otherwise," provide medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability or death. 29 U.S.C. § 1002(a). If the policy is an ERISA plan, then plaintiff's claims under state law are preempted and federal common law will apply to determine her recovery. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56–57, 107 S.Ct. 1549, 1557–58,

95 L.Ed.2d 39 (1987). The district court here determined, on cross-motions for summary judgment, that the policy under which Thompson claimed benefits was an ERISA plan and, therefore, that the federal common law of ERISA applied to determine the merits of this case.

■ Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding circumstances and facts from the point of view of a reasonable person. *See Credit Managers Ass'n of So. Calif. v. Kennesaw Life and Acc. Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987), *citing Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982) (*en banc*). *Accord Gahn v. Allstate Life Ins. Co.*, 926 F.2d 1449, 1451 (5th Cir.1991); *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1082 (1st Cir.), *cert. denied*, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990). Upon reviewing the relevant case law and the record before the district court, the court determines that the district court failed to recognize that a genuine issue of material fact was raised as to the existence of an ERISA plan. For that reason, as explained below, the court vacates the district court's grant of summary judgment, clarifies the appropriate standards, and remands this case to the district court for further proceedings. *See Grimo v. Blue Cross/Blue Shield of Vermont*, 34 F.3d 148, 152 (2d Cir.1994); *Gahn*, 926 F.2d at 1451.

■ In determining whether a plan is an ERISA plan, a district court must undertake a three-step factual inquiry. First, the court must apply the so-called "safe harbor" regulations established by the Department of Labor to determine whether the program was exempt from ERISA. *Fugarino v. Hartford Life and Accident Ins. Co.*, 969 F.2d 178, 183 (6th Cir.1992), *cert. denied*, 507 U.S. 966, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993). Second,

the court must look to see if there was a "plan" by inquiring whether "from the surrounding circumstances a reasonable person [could] ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits." *Int'l Resources, Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 297 (6th Cir.1991) (citing *Donovan*, 688 F.2d at 1373), *cert. denied*, 504 U.S. 973, 112 S.Ct. 2941, 119 L.Ed.2d 565 (1992). Finally, the court must ask whether the employer "established or maintained" the plan with the intent of providing benefits to its employees. *See McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 236 (5th Cir.1995), *cert. denied*, — U.S. —, 116 S.Ct. 1267, 134 L.Ed.2d 214 (1996); *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 977 (5th Cir.1991).[1]

■ Department of Labor ("DOL") regulations set out a "safe harbor" provision that excludes an employee insurance policy from ERISA coverage if: (1) the employer makes no contribution to the policy; (2) employee participation in the policy is completely voluntary; (3) the employer's sole functions are, without endorsing the policy, to permit the insurer to publicize the policy to employees, collect premiums through payroll deductions and remit them to the insurer; and (4) the employer receives no consideration in connection with the policy other than reasonable compensation for administrative services actually rendered in connection with payroll deduction. 29 C.F.R. § 2510.3–1(j). A policy will be exempted under ERISA only if all four of the "safe harbor" criteria are satisfied. *Fugarino*, 969 F.2d at 184, *citing Han-*

*sen*, 940 F.2d at 977. *Accord Grimo*, 34 F.3d at 150; *Gahn*, 926 F.2d at 1451; *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir.1988) (per curiam), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989).

■ In this case, it is admitted by both parties that criteria (1), (2) and (4) are satisfied: Burns contributed nothing toward its employees' participation in the policy, participation was completely voluntary, and Burns received no consideration in connection with the policy. At issue is what, in the absence of these other considerations, constitutes "endorsement" within the meaning of 29 C.F.R. § 2510.3–1(j).

This court has not previously considered the question before us. In *Fugarino*, the court held only that where an employer, as a matter of course, paid premiums for his employees and permitted them to reimburse him and where the employer had paid entirely for at least one employee's coverage, he had done "far more than purchase a group health insurance policy and advise his employees of its availability." 969 F.2d at 184.

Two other circuit courts of appeal have squarely addressed whether an employer can be held to have endorsed an insurance policy so as to bring it within the coverage of ERISA, absent any of the other criteria.[2] In *Hansen v. Continental Ins. Co.*, 940 F.2d 971 (5th Cir.1991), the United States Court of Appeals for the Fifth Circuit held that where the employer distributed a booklet, embossed with its logo, to all employees which encouraged them to give the policy "careful consid-

1. Some courts collapse the first and third prongs of this analysis by interpreting the Department of Labor regulations as the indicia for determining whether a plan is established and maintained by the employer. *See, e.g., Gahn*, 926 F.2d at 1451. Since, however, those courts agree that even if a plan is not within the safe harbor, there must be an additional finding that the employer intended to establish or maintain a plan in order to find that an ERISA plan exists, *see id.*, the court finds that breaking the analysis into three separate prongs is more logical.

2. Other cases discussing endorsement are not squarely on point. For example, *Brundage–Peterson v. Compcare Health Servs. Ins. Corp.*, 877 F.2d 509 (7th Cir.1989), contains broad language which goes to the issue of endorsement. *See id.*

at 511 ("[A]n employer who creates by contract with an insurance company a group insurance plan and designates which employees are eligible to enter in it is outside the safe harbor created by the Department of Labor regulation."). The employer in *Brundage–Peterson*, however, also paid the insurance premiums for its employees, and accordingly, the court's discussion of endorsement is not determinative. *See also Crull v. GEM Ins. Co.*, 58 F.3d 1386 (9th Cir.1995) (ERISA plan existed where employer paid premiums and was named as administrator); *Custer v. Pan American Life Ins. Co.*, 12 F.3d 410 (4th Cir.1993) (ERISA plan existed where employer determined benefits, negotiated terms of coverage, and paid premiums).

eration" as it could be a "valuable supplement to your existing coverage," and which referred to the plan as "our plan," and where the employer employed a full-time employee benefits administrator, who accepted claims forms from employees and submitted them to the insurer, the employer had endorsed the plan. On the other hand, in *Johnson v. Watts Regulator Co.,* 63 F.3d 1129 (1st Cir. 1995), the United States Court of Appeals for the First Circuit held, in circumstances nearly identical to *Hansen,* that the district court's finding of "no endorsement" was not clearly erroneous.

In *Johnson,* the First Circuit clarified the standards that govern a finding of endorsement, including its belief that "endorsement of a program requires more than merely recommending it." 63 F.3d at 1136. According to the *Johnson* court,

> [a]s long as the employer merely advises employees of the availability of group insurance, accepts payroll deductions, passes them on to the insurer, and performs other ministerial tasks that assist the insurer in publicizing the program, it will not be deemed to have endorsed the program under 29 C.F.R. § 2510.3–1(j).... It is only when an employer purposes to do more, and takes substantial steps in that direction, that it offends the ideal of employer neutrality and brings ERISA into the picture.

*Id.* at 1133. The First Circuit further found that, while the *Hansen* court had relied on the employer's intent in determining endorsement, the proper focus was on whether employees could reasonably conclude that the employer had endorsed the policy based on their observation of the employer's activities in connection with the plan. 63 F.3d at 1134 & 1137 n. 6.

The court finds that the First Circuit's approach in *Johnson* is directly in keeping with Congress' intentions in enacting ERISA. According to the Department of Labor, "employer neutrality is the key to the rationale for not treating such a program ... as an employee benefit plan...." 40 Fed. Reg. 34,526 (1975). As the *Johnson* court noted, therefore, where the employer "offends the ideal of employer neutrality" as a result of its level of involvement, ERISA is properly invoked. 63 F.3d at 1133. "Where, however, the employer separates itself from the program, making it reasonably clear that the program is a third party's offering, not subject to the employer's control, then the safe harbor may be accessible." *Id.* at 1137.

The crucial task before the court, therefore, is to determine the set of circumstances in which employer neutrality is compromised to such an extent that ERISA should provide the governing framework. After reviewing the relevant case law, the court determines that a finding of endorsement is appropriate if, upon examining all the relevant circumstances, there is some factual showing on the record of substantial employer involvement in the creation or administration of the plan. *See Hansen,* 940 F.2d at 977 (requiring "some meaningful degree of participation by the employer in the creation or administration of the plan"). For example, where the employer plays an active role in either determining which employees will be eligible for coverage or in negotiating the terms of the policy or the benefits provided thereunder, the extent of employer involvement is inconsistent with "employer neutrality" and a finding of endorsement may be appropriate. *See, e.g., Custer v. Pan American Life Ins. Co.,* 12 F.3d 410, 417 (4th Cir.1993) (considering, *inter alia,* employer's role in negotiating terms and benefits of the policy in determining whether a plan should fall out of the safe harbor); *Wickman,* 908 F.2d at 1083 (considering, *inter alia,* employer's role in devising eligibility requirements when determining the applicability of the safe harbor regulations). Similarly, where the employer is named as the plan administrator, a finding of endorsement may be appropriate. *See, e.g., Kanne,* 867 F.2d at 493; *Shiffler v. Equitable Life Assur. Soc. of U.S.,* 838 F.2d 78, 82 n. 4 (3d Cir.1988) (both considering, *inter alia,* the employer's role in administering the plan when determining whether to allow the policy to come under the safe harbor provision of the DOL regulation).

The court agrees, however, with the holding of the *Johnson* court that the relevant framework for determining if endorsement exists is to examine the employer's

involvement in the creation or administration of the policy from the employees' point of view. *Johnson*, 63 F.3d at 1134 & 1137 n. 6. Accordingly, in evaluating an employer's role in the creation and administration of a plan, emphasis should be placed on those circumstances which would allow an employee to reasonably conclude that the employer had compromised its neutrality in offering the plan. Thus, for example, where the employer provides a summary plan description that specifically refers to ERISA in laying out the employee's rights under the policy or that explicitly states that the plan is governed by ERISA, the employee is entitled to presume that the employer's actions indicate involvement sufficient to bring the plan within the ERISA framework. *See Johnson*, 63 F.3d at 1137 n. 5 (protective filing of ERISA form with the Department of Labor is insufficient to prove employer endorsed a policy in the absence of any evidence that the employees knew of this filing); *Kanne*, 867 F.2d at 493 (where employer, *inter alia*, distributed a summary plan description detailing the employees rights under ERISA, the safe harbor regulations were inapplicable); *Wickman*, 908 F.2d at 1083 (same). *See also Hansen*, 940 F.2d at 976 (finding that an ERISA plan existed because an employer letter accompanying the plan suggested, although without referring to ERISA, that it had endorsed the program).

 Applying these standards to the instant record, it is clear that no sufficient factual showing of substantial employer involvement in the creation or administration of the policy was made in this case to support a finding of endorsement under the DOL regulation. While, like in *Hansen*, the insurance policy here included an introductory letter encouraging employees to obtain accident insurance, that letter was not printed on Burns' letterhead, nor did it refer to the accident insurance policy as Burns' plan. Further, while Burns' name was featured on the cover of the policy description, this fact may be as consistent with identification as endorsement, depending on what the evidence on remand shows concerning the circumstances of its placement. The policy documentation submitted as an exhibit on appeal nowhere mentions that the policy is subject to ERISA, nor does it set out a description of an employee's rights under ERISA. It is unclear from the record whether Burns acts as an administrator, nor is it clear whether Burns participated in either devising the terms of the policy or in processing claims, although the record does indicate that Thompson submitted her claim directly to American Home. The court finds that such evidence presents a material question of fact as to whether Burns endorsed the policy under the DOL regulation. *See Johnson*, 63 F.3d at 1135 n. 3 ("The question of endorsement *vel non* is a mixed question of fact and law. In some cases the evidence will point unerringly in one direction so that a rational factfinder can reach but one conclusion. In those cases, endorsement is a question of law.... In other cases, the legal significance of the facts is less certain, and the outcome will depend on inferences that the factfinder chooses to draw.... In those cases, endorsement becomes a question of fact. This case is of the latter type.") (citations omitted).

The district court's grant of summary judgment, therefore, is vacated, and this case is remanded back to the district court for further proceedings consistent with this opinion. The district court's further consideration of this issue, whether in the context of a renewed summary judgment motion based on a more complete factual record or at trial, should take into account, but is not limited to, Burns's role in administering benefits under the plan, whether the policy language itself contemplates the application of ERISA, and Burns's role in determining eligibility and coverage. The crucial question is whether Burns was substantially involved in the creation and administration of the plan to such an extent that employees could reasonably conclude that Burns had endorsed the plan.

Further, if the district court determines that the policy is not excluded from ERISA coverage under the safe harbor regulations, the court on remand must also determine that a "plan" exists under the standards set forth in *Int'l Resources, Inc.*, 950 F.2d at 297 (a "plan" exists if "from the surrounding circumstances a reasonable person [could]

ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits"). *See also Dist. of Columbia v. Greater Wash. Bd. of Trade,* 506 U.S. 125, 131 n. 2, 113 S.Ct. 580, 584 n. 2, 121 L.Ed.2d 513 (1992); *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 12, 107 S.Ct. 2211, 2218, 96 L.Ed.2d 1 (1987); *Belanger v. Wyman–Gordon Co.,* 71 F.3d 451, 454 (1st Cir.1995) (all defining "plan"). Furthermore, the district court must conclude that Burns "established or maintained" the plan with an intent to provide benefits to its employees. *See McDonald,* 60 F.3d at 236; *Hansen,* 940 F.2d at 977 ("In addition to some meaningful degree of participation by the employer in the creation or administration of the plan, the statute requires that the employer have had a purpose to provide health insurance, accident insurance or other specified types of benefits to its employees. 29 U.S.C. § 1002(1). Thus, ... the evidence must show that the employer had an intent to provide its employees with a welfare benefit program through the purchase and maintenance of [the] group insurance policy.") (internal citation omitted). Only upon completing this three-step factual inquiry can a district court ascertain that an ERISA plan exists, thus requiring the application of the federal common law of ERISA to the underlying insurance claim.

The district court's order setting aside the default judgment against American Home Assurance Company is AFFIRMED, its order granting summary judgment to Thompson is VACATED, and the case is REMANDED for further proceedings.