Charles Chris ELLIOTT, Plaintiff,

v.

**LOCKHEED MARTIN ENERGY SYSTEMS, INC., Defendant.**

No. 3:98–CV–181.

United States District Court,
E.D. Tennessee,
at Knoxville.

Jan. 7, 1999.

Order Denying Motion to Amend
Jan. 25, 1999.

George H Buxton, III, Buxton and Wilkinson, Oak Ridge, TN, for Charles C Elliott, plaintiff.

John C Burgin, Jr, Edwin H Rayson, Jr, Kramer, Rayson, Leake, Rodgers & Morgan, Knoxville, TN, G Wilson Horde, Lockheed Martin Energy Systems, Inc., Oak Ridge, TN, for Lockheed Martin Energy Systems, Inc., defendant.

## MEMORANDUM OPINION

MURRIAN, United States Magistrate Judge.

This case is before the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73(b), Federal Rules of Civil Procedure, for all further proceedings, including entry of judgment [*see* Doc. 9]. This is a declaratory judgment action brought by the plaintiff, Charles Chris Elliott, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1123(a)(1). Specifically, the plaintiff claims that at all times material he was employed by defendant, Lockheed Martin Energy Systems, Inc. ("Lockheed") in Roane County, Tennessee; that he was employed as captain of the fire department for Lockheed at its K–25 plant for 22 years; that as an employee for defendant and as part of his compensation for employment, he participated in the Lockheed Employee Benefit Plan (hereinafter referred to as "the Plan"); that according to the Plan, long term disability benefits are payable to him after he is temporarily totally disabled for six (6) consecutive months; that on January 11, 1996, he suffered an accidental injury to his lower back arising out of and in the course of his employment with defendant; that as a result of this injury, on June 25, 1997, he and the defendant entered into a court approved lump sum settlement, whereby the defendant paid plaintiff $37,428.30 for a 22.5% permanent partial disability to the body as a whole, in addition to future medical costs for his back injury; that subsequent to the back injury, he became and continues to be totally disabled by reason of a psychological depression illness; that there is no dispute that he is entitled to long term disability benefits pursuant to the Plan; but that the long term disability benefits being paid by the defendant for his present permanent "total disability" are being reduced by amortization by the amount of $37,428.30 previously paid to plaintiff for his unrelated workers' compensation settlement with defendant for his 1996 lower back injury; that this reduction is improper and not in accordance with the meaning of the language set forth in the plan; that the terms of the Plan defining reduction in benefits state that a reduction in benefits to an employee for a long term disability will be made if other sources of income, such as workers'

compensation, are payable to an employee because of his disability; that the workers' compensation award for a 1996 lower back injury is unrelated to his present long term disability and should not be a reduction in benefits paid for the unrelated long term disability workers' compensation award; and that the court should enter a declaratory judgment declaring that defendant is not entitled by the Plan to reduce the long term disability benefits paid to plaintiff for his present illness by the workers' compensation benefits paid by defendant for plaintiff's 1996 back injury [*see* Doc. 1].

Oral argument was had in this matter on October 23, 1998, on the parties' Proposed Findings of Fact and Conclusions of Law in accordance with *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir.1998). During oral argument an issue arose regarding whether the Plan Administrator (Lockheed) has a potential conflict of interest regarding the administration of the long term disability plan at issue in this case. In light of the fact that a real or potential conflict of interest might affect the deference this court must give the Plan Administrator's interpretation of the disability plan, the plaintiff was given 30 days within which to take additional discovery and to supplement his proposed findings of fact and conclusions of law, and the defendant was given 10 days from the filing of plaintiff's proposed findings to respond thereto [*see* Doc. 16]. The parties have now filed their supplemental proposed findings of fact and conclusions of law [*see* Docs. 17 and 19] and the matter is ripe for review.

The underlying facts in this action are not in dispute. The parties agree that the critical dispute in this case centers on the amount of deference due the Plan Administrator's interpretation of the pertinent plan provision in this case. The undisputed facts are as follows:

1. The plaintiff was employed as a Captain of the fire department for defendant, Lockheed, at its K–25 plant in Roane County for 22 years.

2. Plaintiff was eligible for and participated in the Lockheed Employee Benefit Plan described in the Lockheed Handbook.

3. On January 11, 1996, plaintiff suffered a work related lower back injury.

4. As a result of this lower back injury, on June 25, 1997, the plaintiff and the defendant entered into a court approved lump sum settlement whereby the defendant paid plaintiff $37,428.30 for a 22.5% permanent partial disability to the body as a whole and agreed to pay future medical costs for the back injury.

5. Plaintiff is currently totally long term disabled by reason of a psychological depressive illness and is entitled to long term disability benefits pursuant to the Plan.

6. The Plan provides, *inter alia*, the following:

**REDUCTION OF BENEFITS**

Your long term disability benefits are reduced by other sources of income that are payable to you because of your disability. Income that will reduce your long term disability benefits includes:

■ workers' compensation benefits or benefits provided under a similar law, state disability benefits and other statutory benefits for disability, retirement or unemployment

■ If any of these benefits are payable as a lump sum, your long term disability benefit will be calculated as if these benefits are paid monthly.

[Doc. 12, Exhibit B, Employee Handbook, p. 89].

6. The long term disability plan benefits being paid by defendant to plaintiff for his current permanent total disability are being reduced by amortization by the amount of $37,428.30, which was previously paid to plaintiff for his workers' compensa-

tion settlement with defendant regarding his 1996 lower back injury.

7. The Plan also provides, *inter alia,* that

> Lockheed Martin Energy Systems, Inc. is the sponsor and the designated Plan Administrator of the plans described in this handbook. . . .
>
> In carrying out its responsibilities under the plans, the Plan Administrator has the exclusive responsibility and full discretionary authority to control the operation and administration of the plans, including, but not limited to, the power to interpret the terms of the plans, to determine eligibility for entitlement to plan benefits and to resolve all interpretive, equitable and other questions that arise in the operation and administration of the plans. All actions or determinations of the Plan Administrator are final, conclusive and binding on all persons.

[Doc. 12, Exhibit B, Employee Handbook, p. 148].

8. Metropolitan Life Insurance Company is the Plan fiduciary, employed by defendant Lockheed, the Plan Administrator, pursuant to an Administrative Services Agreement [Doc. 12, Exhibit C].

9. The long term disability plan at issue is not funded by Lockheed. Rather the long term disability plan is funded by the United States Department of Energy [*see* Doc. 14, Declaration of Norman E, Sparks, Director of Employee Benefits for Lockheed, attached thereto; and Doc. 19, Declaration of Gary J. Draper, Contracts Director for Lockheed, attached thereto].

The plaintiff contends that the workers' compensation benefits paid to him for his back injury are unrelated to his current disability related to depression; that according to the Plan, in order to be income that will reduce his long term benefits, the income must be payable **because of his disability;** and that because the income paid to him in workers' compensation benefits as a result of his back injury is unrelated to his current psychological disability, it is improper for the defendant to reduce his long term disability benefits by a portion of his workers' compensation benefits each month. It is the defendant's position that the phrase "your disability" as used in the Plan includes **any** previous disability which has resulted in the payment of income to the claimant, even if it is unrelated to the disability for which a claimant is receiving long term disability benefits. Thus, the parties have a dispute regarding the interpretation of the terms of the Plan. The critical question in this case is the amount of deference the court must give the Plan Administrator's (defendant's) interpretation of the Plan terms.

The United States Supreme Court has held that if a benefit plan gives discretion to an administrator or fiduciary to determine eligibility for benefits or to construe the terms of the plan, then the administrator's interpretation of the plan's terms is entitled to be reviewed under the "arbitrary and capricious" standard of review. *Firestone Tire and Rubber Company v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). *See also Varhola v. Cyclops Corporation,* 914 F.2d 259, 1990 WL 126412 (6th Cir.1990) (UNPUBLISHED OPINION); *Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689, 693–694 (6th Cir.1989), *cert. denied,* 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990). There is no question that the terms of the Plan gives the defendant, administrator, the discretion to determine eligibility for benefits and to construe the terms of the Plan. *See* Doc. 12, Exhibit B, Employee Handbook at p. 148; and Finding No. 7 herein. If, however, the administrator or fiduciary is operating under a conflict of interest, then "that conflict must be weighed as a 'factor [ ] in determining where there is an abuse of discretion.'" *Davis,* 887 F.2d at 694, quoting *Bruch, supra.*

Plaintiff claims that the defendant is operating under a conflict of interest in this case because defendant has a financial

interest in the administration of funding of the long term disability plan. The gist of the plaintiff's argument is that pursuant to its contract with the Department of Energy, Lockheed will be paid incentive fees for cutting costs. In support of its argument, the plaintiff relies upon certain portions of the contract between Lockheed and the Department of Energy. After examining the portions of the Lockheed–DOE contract relied upon by plaintiff, I find that these portions of the contract do demonstrate (1) that items of cost allowable under the contract include personnel costs, and specifically include contributions to, *inter alia,* "voluntary or agreed-upon plans providing benefits for retirement, separation, life insurance, hospitalization, medical-surgical and unemployment (whether or not such plans are covered by insurance) ..." [Doc. 17, Attachment thereto, § I.78(d)(8)(ii), at pp. 109–110 of 178]; and (2) that DOE uses a cost savings program whereby the Contractor (Lockheed) is encouraged to assess its operations and make them more cost effective and that "[t]he amount of the savings under [the] program will be incentivized through" a fee arrangement specified in the contract [*id.,* §§ H.5 and B.1(b)(2), at pp. 6–7 of 178].

Lockheed has, however, presented evidence that the cost savings incentive plan is not in any way related to the long term disability plan. Specifically, Lockheed relies upon the affidavit of Gary J. Draper, the Contracts Director for Lockheed [Doc. 19, Declaration attached thereto]; Lockheed's contract with DOE [*id.,* Exhibit A], a copy of the Cost Savings Special Emphasis Area from the second half of the fiscal year 1996 award fee plan [*id.,* Exhibit B], and a copy of the Performance Measurement Team Report of the Department of Energy on the Cost Savings Special Emphasis Area for the second half of fiscal year 1996 [*id.,* Exhibit C]. Mr. Draper explains in his affidavit that since April 1, 1984, Lockheed has managed and operated one or more government owned facilities in Oak Ridge, Tennessee, pursuant to a contract with the DOE; that Lockheed's contract with DOE provides, among other things, that Lockheed operates the government owned facilities under a cost plus type contract; that generally, "allowable costs" of the contract are "the costs and expenses that are actually incurred by [Lockheed] in the performance of the contract work in accordance with its terms, that are necessary or incident thereto, and are determined to be allowable" pursuant to the terms of § 1.78(c) of the contract; that Lockheed receives funding from DOE for any allowable cost; that prior to fiscal year 1997, Lockheed was paid a "basic fee" and an "award fee"; that effective October 1, 1996, Lockheed and DOE entered into a new type of contract known as a "Performance Based Management Contract;" that under this contract, several fee arrangements were established to measure contractor performance and provide appropriate compensation; that pursuant to § B.2 of the contract, the parties negotiate a basic fee and an award fee pool on an annual basis; that in fiscal year 1996, the parties agreed to designate part of the award fee pool as a Special Emphasis Area related to Cost Savings; that § B.3 of the contract authorizes the parties to negotiate a "Performance–Based Incentive Fee" based on clearly defined and objectively measured performance measures; that none of the performance measures developed were related to or associated with the Long Term Disability Plan; that § B.5 was part of the contractual mechanism used to identify, propose and negotiate existing work scope on a cost-plus-incentive fee (CPIF) basis as opposed to the cost-plus-award-fee mechanism used under §§ B.2 and B.3 to perform most of the contract work; that in fiscal year 1996, § B.5 was only applicable to three environmental projects worth about $40M at the K–25 site; that one aspect of the "Performance Based Management Contract" establishes a "Cost Savings Program" designed to "measure and report all cost savings;" that the terms of this program

are set forth in § H.5 of the contract; that one of the cost savings programs is the Cost Savings Special Emphasis Area set forth in the fiscal year 1996 award fee plan; that Lockheed is not eligible for a cost savings fee simply because it spends less or increases output in a particular program or organization; that instead, DOE requires Lockheed to document the specific action taken, provide details necessary to support the amount of any savings, and show what happened to the amount saved; that Lockheed must present documentation on specific cost savings to a "Cost Savings Review Board" (CSRB) which evaluates each submitted savings on a case by case basis; that based upon total documented and approved cost savings, the CSRB then makes a recommendation to the Award Fee Board on the amount of special emphasis fee to be paid based on award fee plan schedule; that generally, Lockheed's "award fee" is the amount paid to Lockheed as a result of its management of the Oak Ridge facilities; that the "cost savings special emphasis fee" is one aspect of the award fee; that for fiscal year 1996, DOE set aside a total of ten million dollars from the award fee pool for the Cost Savings Special Emphasis Area; that in order to earn the entire $10 million, Lockheed had to establish "approved cost savings" in the amount of $100 million; that approved cost savings totaling less than $100 million resulted in a reduced special emphasis fee; that in fiscal year 1996, for example, Lockheed's approved cost savings totaled $79 million, resulting in a total special emphasis fee of $8 million; that he has reviewed the "tracking log" set up by Lockheed in conjunction with the CSRB; that none of the 348 items listed on the log constitutes a claim for cost savings realized (or potentially realized) as a result of any aspect of Lockheed's Long Term Disability Plan; that for fiscal year 1996, none of the costs savings claimed by Lockheed pursuant to the fiscal year 1996 award fee plan were as a result of or related to expenses incurred as a result of benefits paid pursuant to Lockheed's Long Term Disability Plan;

that for fiscal year 1997, no award fee dollars were segregated into a special cost savings area; and that for fiscal year 1997, none of the costs savings claimed by Lockheed pursuant to its cost savings program were as a result of or related to expenses incurred as a result of benefits paid pursuant to Lockheed's Long Term Disability Plan [Doc. 19, Draper Declaration attached thereto].

Mr. Draper's affidavit is not disputed in any way.

In light of the fact that the Long Term Disability Plan is not funded by Lockheed, but instead is funded by the DOE, there is no "inherent conflict" presented in this case as was presented in *Brown v. Blue Cross and Blue Shield of Alabama, Inc.,* 898 F.2d 1556 (11th Cir.1990), *cert. denied,* 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991), and relied upon by the plaintiff. Although the federal courts have not adopted any uniform approach to explaining how a conflict of interest is to be factored into the arbitrary and capricious standard of review, the courts do seem to be in agreement that the plaintiff has the initial burden of demonstrating the presence of a conflict of interest. *See e.g., Brown v. Blue Cross,* 898 F.2d at 1566–67 ("**[w]hen a plan beneficiary demonstrates a substantial conflict of interest on the part of the fiduciary** responsible for benefits determinations, the burden shifts to the fiduciary to prove that its interpretation of plan provisions committed to its discretion was not tainted by self interest. . . . [ (emphasis added) ]"); *Atwood v. Newmont Gold Co.,* 45 F.3d 1317, 1322–23 (9th Cir.1995) (court held that the traditional abuse of discretion standard of review is to be applied unless the beneficiary provides probative evidence that the "fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary."); *Mers v. Marriott International Group Accidental Death and Dismemberment Plan,* 144 F.3d 1014, 1020 (7th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 372, 142 L.Ed.2d 307 (1998) (court

held that "[w]e presume that a fiduciary is acting neutrally unless a claimant shows by providing specific evidence of actual bias that there is a significant conflict"); *Sciarra v. Reliance Standard Life Insurance Co.*, 1998 WL 564481 (E.D.Pa.1998) (court recognized that the law in the Third Circuit is that the beneficiary bears the burden of establishing a conflict of interest); *Best v. Nissan Motor Corporation*, 973 F.Supp. 770, 775–776 (M.D.Tenn.1997) (after finding that plaintiff had demonstrated a genuine conflict of interest, the court considered the effect of that conflict on the arbitrary and capricious standard of review).

In light of the unrebutted evidence presented by Lockheed which demonstrates no connection between the Long Term Disability Plan and the cost cutting incentive fees, and thus, no conflict of interest on the part of Lockheed in its administration of the Long Term Disability Plan, I find that the traditional arbitrary and capricious standard of review applies in this case. Plaintiff has simply not met his burden of demonstrating the existence of an actual or potential conflict sufficient to alter the application of the tradition arbitrary and capricious standard of review.

> "The arbitrary or capricious standard is the least demanding form of judicial review of administrative action." *Pokratz [v. Jones Dairy Farm* ], 771 F.2d [206,] at 209 [(7th Cir.1985)]. "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Ibid.*

*Davis*, 887 F.2d at 693. The Sixth Circuit has held that "an administrator's decisions on eligibility for benefits are not arbitrary and capricious if they are 'rational in light of the plan's provisions.' *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir.), *cert. denied*, 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988)." *Miller v. Metropolitan Life Insurance Company*, 925 F.2d 979, 984 (6th Cir.1991). When an aggrieved beneficiary and the plan fiduciary both offer rational, but conflicting interpretations of the plan's provisions, the administrator's interpretation must control. *Wells v. United States Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1248 (6th Cir.1991).

■ After reading the applicable provisions of the Long Term and Short Term Disability plans provided by Lockheed, I do not find that Lockheed's interpretation of the phrase "because of your disability" is contrary to the plain language of the Plan and that Lockheed's interpretation must be upheld. In the Disability section of the Plan, on the page entitled "Highlights," it is clearly set forth that:

> Your disability benefits . . .

· · · · ·

### . . . ARE COORDINATED WITH OTHER DISABILITY INCOME

> Your short term disability and long term disability benefits may be reduced by other income benefits, such as workers' compensation and Social Security, that you receive while disabled.

[Doc. 12, Employee Handbook, Exhibit B, at p. 87]. There is no statement or other indication in the foregoing that the disability for which long term disability benefits are payable must be related to the disability for which the other income benefits are received in order to cause a reduction in long term disability benefits. Rather, the foregoing language indicates that any "other disability income" will reduce a beneficiary's long term disability benefits. Additionally, although the plaintiff has offered a reasonable interpretation of the phrase "because of your disability," the sentence immediately following states that:

> Income that will reduce your long term disability benefits includes:
>
> ■ workers' compensation benefits or benefits provided under a similar law, state disability benefits and other statutory benefits for disability, retirement or unemployment.

· · · · ·

This language contains no limitation to workers' compensation benefits received only for the same or related disability for which long term disability benefits are payable.

In light of the foregoing, I find that the traditional arbitrary and capricious standard of review must be applied to the defendant's interpretation of the Plan provisions at issue in this case; that pursuant to this standard of review, the defendant has offered a reasonable interpretation of the Plan language which must be upheld; that plaintiff's request for a declaratory judgment that the reduction of his Long Term Disability benefits to account for a prior workers' compensation settlement is contrary to Lockheed's Long Term Disability Plan must be denied; and that this case should, therefore, be dismissed.

Order Accordingly.

## ORDER DENYING MOTION

This case is before the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73(b), Federal Rules of Civil Procedure, for all further proceedings, including entry of judgment [*see* Doc. 9]. This is a declaratory judgment action brought by the plaintiff, Charles Chris Elliott, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1123(a)(1).

In a Memorandum Opinion and Order filed in January 7, 1999, the undersigned ordered that this case be dismissed after finding that the defendant's interpretation of the Long Term Disability Plan ("the Plan") at issue was subject to an "arbitrary and capricious" standard of review; and that the defendant had offered a reasonable interpretation of the Plan which must be upheld [*see* Docs. 21 and 22].

■ Plaintiff moves the court pursuant to Rule 59(e), Fed.R.Civ.P., to alter the Order entered on January 7, 1999, because the court did not address his argument that the subject Plan is exempt from ERISA in accordance with the "Safe Har-

bor" provisions of the Department of Labor Regulations, 29 C.F.R. § 2510.3–1(3) [Doc. 23].

29 C.F.R. § 2510.3–1(j) provides the following:

For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which

(1) No contributions are made by an employer or employee organization;

(2) Participation [in] the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

These regulations are referred to as the "safe harbor" regulations and are used to determine whether an employee benefit program is exempt from ERISA. *See Thompson v. American Home Assurance Company*, 95 F.3d 429, 434 (6th Cir.1996). **All four** of the "safe harbor" regulations must be satisfied in order to exempt a policy under ERISA. *Thompson*, 95 F.3d at 435.

■ It appears, and for purposes of this discussion it will be assumed, that regulations 1, 2, and 4 are satisfied. The question is whether the defendant has or has not endorsed the policy within the meaning of 29 C.F.R. § 2510.3–1(j)(3). The United

States Court of Appeals for the Sixth Circuit has adopted the standards established by the First Circuit governing endorsement:

> [a]s long as the employer merely advises employees of the availability of group insurance, accepts payroll deductions, passes them on to the insurer, and performs other ministerial tasks that assist the insurer in publicizing the program, it will not be deemed to have endorsed the program under 29 C.F.R. § 2510.3–1(j).... It is only when an employer purposes to do more, and takes substantial steps in that direction, that it offends the ideal of employer neutrality and brings ERISA into the picture.

*Thompson,* 95 F.3d at 436, *quoting Johnson v. Watts Regulator Co.,* 63 F.3d 1129, 1133 (1st Cir.1995). There must be substantial employer involvement in the creation or administration of the plan in order to find employer endorsement and "emphasis should be placed on those circumstances which would allow an employee to reasonably conclude that the employer had compromised its neutrality in offering the plan." *Thompson,* 95 F.3d at 437. Applying the foregoing guidelines, the Sixth Circuit held that a finding of endorsement may be proper where the employer is named as the plan administrator and that

> where the employer provides a summary plan description that specifically refers to ERISA in laying out the employees' rights under the policy or that explicitly states that the plan is governed by ERISA, the employee is entitled to presume that the employer's actions indicate involvement sufficient to bring the plan within the ERISA framework.

*Thompson,* 95 F.3d at 437.

▇ I find that the defendant clearly endorsed the Plan at issue in this case. Specifically, the defendant is named as the plan sponsor and administrator [Doc. 12, Exhibit B, Employee Handbook, at p. 148]. Additionally, the defendant provides a summary plan description in the Employee Handbook which contains an entire page

that specifically refers to ERISA in explaining the employee's rights under the policy [*id.,* at p. 157].

In light of the foregoing, I find that the defendant's actions indicate involvement sufficient to bring the subject Plan within the ERISA framework. *See Thompson, supra.* Thus, all four one of the "safe harbor" regulations have not been satisfied and the Plan at issue in this case is not exempt under ERISA.

There being no reason to alter or amend the Order dismissing the plaintiff's complaint for declaratory relief, the plaintiff's motion to alter or amend the judgment pursuant to Rule 59(e), Fed.R.Civ.P., **will be denied.**