Loretta C. STOUDEMIRE, Plaintiff,

v.

**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY and Rodger G. Smyth, Defendants.**

Civil Action No. 98–A–871–E.

United States District Court,
M.D. Alabama,
Eastern Division.

Sept. 24, 1998.

Allen W. Howell—Montgomery, AL, for Plaintiff.

Henry T. Morrissette, E. Luckett Robinson—Mobile, AL, for Defendant.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This cause is before the court on a Motion to Remand by Plaintiff Loretta C. Stoudemire ("Stoudemire"), filed on August 20, 1998. Stoudemire originally filed her Complaint in this action on July 7, 1998 in the Circuit Court for Macon County, Alabama. In her Complaint, Stoudemire asserts two claims arising under state law. Count I states a claim for fraudulent inducement, and Count II states a claim for breach of contract—bad faith failure to pay.

On August 7, 1998, pursuant to 28 U.S.C. § 1446, Defendants Provident Life and Accident Insurance Company ("Provident") and Rodger D. Smyth ("Smyth") (collectively, "Defendants") removed this case to the United States District Court for the Middle District of Alabama. Defendants contend removal is proper because the Group Disability Insurance Plan ("the Policy") at issue in this case is part of an "employee welfare benefit plan" within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(1). Defendants further contend that since all of Stoudemire's claims relate to the ERISA welfare benefit plan, her state law claims are preempted under 29

U.S.C. § 1144(a). *See Engelhardt v. Paul Revere Life Ins. Co.,* 139 F.3d 1346 (11th Cir.1998); *Hall v. Blue Cross / Blue Shield of Alabama,* 134 F.3d 1063 (11th Cir.1998); *Franklin v. QHG of Gadsden, Inc.,* 127 F.3d 1024 (11th Cir.1997).

For reasons to be discussed, the Motion to Remand is due to be DENIED.

### II. REMAND STANDARD

█] Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Burns v. Windsor Insurance Co.,* 31 F.3d 1092, 1095 (11th Cir. 1994); *Wymbs v. Republican State Executive Committee,* 719 F.2d 1072, 1076 (11th Cir. 1983). As such, federal courts only have the power to hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *See Kokkonen,* 511 U.S. at 377, 114 S.Ct. 1673. Because federal court jurisdiction is limited, the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear. *See Burns,* 31 F.3d at 1095.

### III. FACTS

The parties allege the following facts relevant to this court's consideration of the Motion to Remand:

Stoudemire purchased the Policy in 1991, while she was employed as a registered nurse at Baptist Medical Center ("BMC"). *See* Def.'s Notice of Removal at Ex. A, Enrollment Form. Stoudemire worked full-time at BMC until December of 1995, when she experienced serious health problems. Def.'s Br.[1] at 2 and Ex. B, Employer's Statement of Claim. These health problems led to Stoudemire's resignation from her employment with BMC on February 10, 1996 and formed the basis of her disability claim under the Policy. *Id.*

Defendants point to several facts in support of their contention that the Policy is an ERISA plan. The Policy, which was issued to BMC, insured Stoudemire as an employee

---

1. "Def.'s Br." refers to Defendant Provident's Brief in Opposition to Plaintiff's Motion to Remand, and "Pl.'s Br." refers to Plaintiff Stoude- mire's Reply to Defendants' Brief in Opposition to Plaintiff's Motion to Remand.

of BMC. Def.'s Br. at 3 and Notice of Removal at Ex. A, Enrollment Form. The Policy was part of an overall benefits program made available to BMC's employees through the Baptist Health Employee Benefits Program. Def.'s Br. at 3 and Ex. A, Brown Aff. at ¶¶ 3–4. The Policy is described in Baptist Health's Benefits Handbook. *See* Def.'s Br. at 3–4 and Ex. E, Att. A., "Your Benefits Program," at 11–12.[2] The Policy is also mentioned in Baptist Health's BeneFlex Plan as an insurance policy which can be purchased with before-tax dollars. *Id.* at Ex. E, Att. B, "BeneFlex Plan," at 1. The BeneFlex Plan also acknowledges that the Baptist Health Services employee benefits programs are subject to ERISA. *Id.* at Ex. E, Att. B "BeneFlex Plan," at 13–14.

Stoudemire, however, presents facts in support of her contention that the Policy is exempted from ERISA coverage under 29 C.F.R. § 2510.3-1(j). *See* Pl.'s Br. at 3–4. Stoudemire paid all of the costs of the Policy, without any contributions from her employer, as required by Baptist Health's "Your Benefits Program" handbook. *Id.* at 3; Def.'s Br. at Ex. E, Att. A, "Your Benefits Program," at 11. Stoudemire's purchase of the Policy was voluntary. *See* Pl.'s Br. at 3–4 and Def.'s Br, at Ex. A, Brown Aff., at ¶ 4. Stoudemire alleges that BMC is not involved in the design or management of the plan and that she had no reason to believe that BMC had endorsed the Policy. *See* Pl.'s Br. at 4 and Stoudemire Aff. at ¶¶ 2–3, 5–6. Finally, Stoudemire alleges that BMC received no consideration from Provident in connection with the Policy. Pl.'s Br. at 4–5 and Stoudemire Aff. at ¶ 5.

## IV. *DISCUSSION*

### A. Complete Preemption

■ Removal of a case to federal court is only proper if the case originally could have been brought in federal court. *See* 28 U.S.C. § 1441(a). In this case, the Defendants argue that removal was proper because the court has federal question jurisdiction. Fed-

eral question jurisdiction requires that the action arise under the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 1331. In deciding whether a federal question exists, the court must apply the well-pleaded complaint rule whereby the court looks to the face of the complaint, rather than to any defenses asserted by the defendant. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Consequently, the general rule is that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption. *See Caterpillar,* 482 U.S. at 393, 107 S.Ct. 2425.

■ There is, however, an exception to the well-pleaded complaint rule which the Defendants claim applies in the present case to give this court federal question jurisdiction. This exception is known as the "complete preemption" doctrine. *Id.* The doctrine of complete preemption is distinguished from a simple defense of preemption in that simple preemption is a question of whether a defense is available under federal law, while complete preemption is a jurisdictional question which focuses on Congress' intent to make "the cause of action a federal cause of action and removable despite the fact that the Plaintiffs' complaint identifies only state claims." *Whitman v. Raley's Inc.,* 886 F.2d 1177, 1181 (9th Cir.1989). Therefore, where the removal petition demonstrates that the plaintiff's claims, although couched in the language of state law claims, are federal claims in substance, the preemptive force of federal law provides the basis for removal jurisdiction. *See Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968).

■ The Supreme Court has determined that the uniform regulatory scheme established by ERISA is one area in which Congress intended to provide for complete preemption. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 64–67, 107 S.Ct. 1542,

---

**2.** The court notes that this handbook, "Your Benefits Program," which describes Baptist Health's employee benefits plan was in effect in 1991, when Stoudemire purchased the Policy. Def.'s Br. at Ex. E, Harrison Declaration, at ¶ 2 and Att. A. The "Beneflex Plan" handbook at Ex. B

was also the version in effect in 1991. *Id.* This court will therefore consider only these two handbooks in its evaluation of the Policy and will not consider BMC's other handbooks which describe BMC's benefits plans as of June, 1996.

95 L.Ed.2d 55 (1987). Congress' intent is evidenced in the statutory provision of ERISA which provides that ERISA shall supersede state laws insofar as they may relate to any employee benefit plan. 29 U.S.C. § 1144(a). Therefore, if state law claims "relate to" an ERISA plan within the meaning of ERISA's preemption provision under 29 U.S.C. § 1144(a), the claims are converted to federal claims for the purposes of removal jurisdiction. *Taylor,* 481 U.S. at 60, 107 S.Ct. 1542.

■] The Supreme Court has stated that the words "relate to" in ERISA's preemption provision should be broadly construed in that a particular state law claim "relates to" an ERISA plan if the state law claim has a "connection with or reference to" an employee benefit plan. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Such a determination must be made with a common sense view of the matter. *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). Even a state law with only an indirect effect on a benefit plan can be preempted unless it affects the plan in "too tenuous, remote, or peripheral a manner." *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. 2890.

Claims which are "related to" ERISA plans are those claims which specifically refer to and would affect an ERISA plan, would contravene the structure or purpose of ERISA, would require a construction of the benefit plan, or would mandate an interpretation of the statutory duties of one of the parties to the plan. *See Consumer Benefit Ass'n v. Lexington Ins. Co.,* 731 F.Supp. 1510, 1515 (M.D.Ala.1990).

### B. Statutory scheme

This court begins with ERISA's statutory scheme. In relevant part, ERISA defines the terms "employee welfare benefit plan" and "welfare plan" as:

any plan, fund, or program which ... is ... established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants ... through the purchase of insurance or otherwise, ... benefits in the event of sickness, accident, disability, [etc.]. . . .

29 U.S.C. § 1002(1). Stoudemire apparently concedes that the Policy falls within ERISA's general definition of an "employee welfare benefit plan."

Stoudemire, however, contends that the Policy falls within the Department of Labor's "safe harbor" regulation which exempts some employee welfare benefit plans from ERISA coverage. The relevant section provides:

(j) *Certain group or group-type insurance programs.* For purposes of title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members or an employee organization under which

(1) No contributions are made by an employer or employee organization;

(2) Participation [in] the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form or cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3–1(j). If the Policy is an ERISA employee welfare benefit plan which does not fit within the safe harbor exemption, Stoudemire's state law claims will be preempted if they "relate to" the Policy.

### C. Stoudemire's claims

■ The Eleventh Circuit has stated that an ERISA employee welfare plan requires (in relevant part): (1) a plan, fund, or program (2) established or maintained (3) by an

employer (4) for the purpose of providing disability benefits (5) to participants or their beneficiaries. *Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir.1982). Most of these requirements are easily met by the Policy. The Policy is an insurance program which has the purpose of providing disability benefits to BMC's employee's who purchase the policy. The critical issue is whether the Policy was established or maintained by BMC.

As one judge in this district has noted, the Department of Labor's safe harbor regulation, 29 C.F.R. § 2510.3–1(j), gives guidance in determining whether a plan is "established or maintained" by an employer. *Levett v. American Heritage Life Ins. Co.,* 971 F.Supp. 1399, 1402 (M.D.Ala.1997) (citing *Johnson v. Watts Regulator Co.,* 63 F.3d 1129, 1133 (1st Cir.1995)) (De Ment, J.). If all four of the safe harbor requirements are met, the Policy will be deemed not to have been "established or maintained" by BMC and thus exempted from ERISA coverage. Stoudemire's state law claims will therefore not be preempted if the Policy meets all of these safe harbor requirements.

Three out of the four requirements apparently are uncontested. First, Stoudemire paid all of the premiums for the Policy; neither BMC nor Baptist Health contributed to the payment of any premiums for the Policy. Second, Stoudemire's purchase of the Policy was purely voluntary. Third, there is no evidence that BMC or Baptist Health received any consideration in connection with the Policy. While BMC or Baptist Health may have received an indirect tax savings if employees elected to use before-tax earnings to pay for the Policy, any connection between these potential, incidental tax savings and the Policy is simply too tenuous to rise to the level of consideration and remove this claim from the safe harbor provision.

Whether the Policy meets the non-endorsement requirement is the contested issue. This court has noted:

According to the Department of Labor, "employer neutrality is the key to the rationale for not treating such a program [which meets all requirements of 29 C.F.R. § 2510.3–1(j) ] as an employee benefit plan, namely the absence of employer involvement." 40 Fed.Reg. 34,526 (1975).

"The purpose of these requirements is to be sure there is no employer involvement in the management or design of the program. Because of this absence of involvement, the Department of Labor determined that there is no purpose served by imposing ERISA requirements on an employer through whose employment the program is offered." Ellen A. Hennessy, Welfare Plans in Corporate Transactions, 263 PLI/Tax 375 (1987).

*Jones v. Pioneer Life Ins. Co.,* 858 F.Supp. 164, 166 (M.D.Ala.1994).

The First Circuit has elaborated on the required neutrality, noting that:

as the regulation itself indicates, remaining neutral does not require an employer to build a moat around a program or to separate itself from all aspects of program administration. Thus, as long as the employer merely advises employees of the availability of group insurance, accepts payroll deductions, passes them on to the insurer, and performs other ministerial tasks that assist the insurer in publicizing the program, it will not be deemed to have endorsed the program under section 2510.3–1(j)(3).... It is only when an employer purposes to do more, and takes substantial steps in that direction, that it offends the ideal of employer neutrality and brings ERISA into the picture.

*Johnson v. Watts Regulator Co.,* 63 F.3d 1129, 1134 (1st Cir.1995) (citations omitted).

■] The facts of this case fall between the extremes of complete neutrality and total endorsement. This court must determine whether BMC, Stoudemire's immediate employer, stepped over the line from neutrality to active endorsement by "establishing or maintaining" the Policy at issue. The Eleventh Circuit has not yet addressed the endorsement issue in any detail. *See Riggs v. Smith,* 953 F.Supp. 389, 394 (S.D.Fla.1997). This court therefore relies on guidance from the circuits which have directly tackled the endorsement question. In accordance with persuasive authority, this court determines the issue by focusing on the employer and its involvement with the administration of the plan. *Hansen v. Continental Ins. Co.,* 940 F.2d 971, 978 (5th Cir.1991). The employer's

involvement will be evaluated from the point of view of a reasonable employee. *See Thompson v. American Home Assurance Co.*, 95 F.3d 429, 436–37 (6th Cir.1996) (citing *Johnson*, 63 F.3d at 1134 & 1137 n. 6).

Defendants have alleged facts which support that BMC and Baptist Health were active in the administration of and endorsed the Policy. Defendants contend that the description of the Policy in the relevant Baptist Health "Your Benefits Program" and "Your Beneflex Plan" handbooks show that BMC and Baptist Health endorsed the Policy. In the applicable "Your Benefits Program" handbook, the Policy is described as follows:

### The Long Term Disability Plan

We don't like to think about becoming disabled, but it could happen. If you do become disabled, you and your family still face day-to-day living expenses—and there may be related medical expenses—when you're unable to work for an extended period of time due to serious illness or injury. The Long Term Disability (LTD) Plan can help you meet some of these expenses by continuing part of your pay while you're totally disabled.

You pay the entire cost for disability coverage.

### Choose The Amount of Coverage

With this plan, you can choose the amount of income you wish to continue if you become disabled. Your decision may depend on your financial obligations and the number of people who rely on your paycheck.

### Important Features

This plan allows you to receive income as long as you are unable to work in your own occupation or specialty. This means that even if you can work at another job, you can continue to receive income from this plan.

The plan also allows you to increase your coverage automatically to keep up with cost of living or inflation.

### For More Information

The Human Resources Department has more information on this important benefit.

Defs.Br. at Ex. E, Att. A, "Your Benefits Program," at 11–12. The BeneFlex Plan, described in its own handbook and mentioned in the "Your Benefits Program" handbook, allows for before-tax premium payments for the Policy. *Id.* at 3 and Att. B, "Beneflex Plan," at 1. Defendants state that these Baptist Health benefit booklets and plan documents are "distributed to and/or made available to Baptist Medical Center employees." Def.'s Br. at 12 and Ex. A, Brown Aff. at ¶ 3.

Furthermore, BMC is the designated Group Policyholder on the Policy. *Id.* at 3 and Ex. D. When Stoudemire filed her claim for disability benefits under the Policy, a member of BMC's human resources personnel was required to complete the "Employer's Statement" on her claim form as an agent of BMC, the Group Policyholder. *Id.* at Ex. B. Defendants also offer an affidavit from BMC's General Counsel, who states that "Baptist Medical Center endorses and has approved the long term disability insurance coverage provided by Baptist Medical Center as a benefit to its employees." Def.'s Br. at 12 and Ex. A, Brown Aff. at ¶ 4.

Stoudemire, however, alleges facts which support that she did not know that BMC or Baptist Health endorsed the Policy. She states that BMC did not provide her any documentation about the Policy prior to her instigation of this lawsuit. Pl.'s Br. at 4 and Stoudemire Aff. at ¶ 6. Stoudemire also alleges that named individual defendant Smyth, the agent who sold her the Policy, provided all of the information she received regarding the Policy. *Id.* at ¶ 2. Stoudemire also claims that she was told by "the people at Baptist" that "they did not have any policy or certificate and had nothing to do with the disability insurance except to collect the premium money from our paychecks." *Id.* at ¶ 5. Stoudemire fails, however, to allege when this information was given to her and whether she relied on this information when she purchased the Policy.[3]

Accepting the above facts as true, Stoudemire may not have personally known that BMC endorsed the Policy. That, however, is

---

**3.** On September 23, 1998, Defendant Provident filed a Motion to Strike ¶ 5 of Stoudemire's Affidavit as inadmissible hearsay pursuant to Fed. Rs.Evid. 801 and 802. Defendant's Motion to Strike is GRANTED.

not the question. The question, rather, is whether, given BMC's involvement with the Policy, a reasonable employee would have known that BMC endorsed the Policy. *See Thompson v. American Home Assurance Co.,* 95 F.3d 429, 436–37 (6th Cir.1996); *Johnson v. Watts Regulator Co.,* 63 F.3d 1129, 1134 & 1137 (1st Cir.1995). This court finds that a reasonable employee would have known, given the facts alleged above, that BMC endorsed the Policy. The Policy was included and promoted by BMC and Baptist Health as part of its employee benefits plan, and BMC and Baptist Health encouraged their employees to purchase the Policy. The Policy was described and promoted by two separate employee benefits handbooks distributed to BMC employees. A reasonable employee would have examined BMC's employee benefits handbooks to determine what benefits were provided and/or made available by her employer and understood the Policy to be part of the benefits package established or maintained by BMC. *See Hansen v. Continental Ins. Co.,* 940 F.2d 971, 978 (5th Cir. 1991) (finding that a "Group Accident Insurance Plan" was an employee welfare benefit plan within the meaning of ERISA where the employer distributed a booklet bearing the employer's name and corporate logo and encouraging employees to carefully consider purchasing the plan).

Under these circumstances, BMC did not maintain the regulation's required neutrality toward the Policy. BMC did far more than permit the insurer to publicize the program to employees, collect premiums through payroll deductions and remit premiums to the insurer. Instead, BMC was active in establishing and maintaining the Policy and promoting the Policy as BMC's own. BMC obtained the Policy as the Group Policyholder, made it available to BMC's employees on a pre-tax basis as part of its cafeteria and employee benefits plans, and actively encouraged BMC's employees to participate in the Policy. Thus, the Policy does not fit into the regulation's safe harbor exemption from ERISA.

This court finds that the surrounding circumstances indicate that BMC endorsed the Policy, rather than merely publicizing it. The same facts support that BMC intended to establish the Policy as an ERISA plan in order provide disability insurance coverage for BMC's employees. This court also finds that the Policy is an ERISA plan within the Eleventh Circuit's general definition because (1) the Policy is a "plan" (2) established or maintained (3) by BMC (4) for the purpose of providing disability benefits (5) to participating BMC employees. *See Donovan v. Dillingham,* 688 F.2d 1367, 1370 (11th Cir.1982).

■ If Stoudemire's state law claims "relate to" this ERISA plan, they are preempted. *See* 29 U.S.C. § 1144(a). "Relate to" in ERISA's preemption provision is broadly construed in that a particular state law claim "relates to" an ERISA plan if the state law claim has a "connection with or reference to" an employee benefit plan. *New York Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)).

Count I of Stoudemire's Complaint states a claim for fraud in the inducement against Smyth, in his individual capacity and as an agent for Provident, and against Provident, pursuant to Ala.Code § 6–5–300, as Smyth's principal. The Eleventh Circuit recently addressed the preemption of an Alabama fraudulent inducement claim in *Hall v. Blue Cross/Blue Shield of Alabama,* 134 F.3d 1063 (11th Cir.1998). In *Hall,* the plaintiff claimed that she could state a prima facie case of fraudulent inducement by merely showing that Blue Cross' denial of coverage was inconsistent with its agents' representations without ever referencing the plan's terms and provisions. *Id.* at 1065. The court found, however, that no court would be able to determine whether the plaintiff had been fraudulently induced without resorting to the written policy and assessing the truth of the agents' representations. *Id.* The court noted that because the terms of the ERISA-governed policy were critical to the resolution of the plaintiff's fraudulent inducement claims, the claims were sufficiently related to an employee benefits plan to be preempted by ERISA. *Id.* at 1065–66.

This court reaches the same result for Stoudemire's fraudulent inducement claim. No court would be able to determine whether

Stoudemire had been fraudulently induced without examining the written policy and assessing the truth of Smyth's representations. The terms of the Policy are critical to the resolution of Stoudemire's fraudulent inducement claim, and this claim is sufficiently "related to" the Policy for purposes of ERISA preemption. Under *Hall*, Stoudemire's state law claim for fraudulent inducement is "related to" the Policy and is therefore preempted by ERISA.

Stoudemire's reliance on *Morstein v. National Ins. Services, Inc.* for non-preemption of this claim is unwarranted. 93 F.3d 715 (11th Cir.1996), *cert. denied sub nom Shaw Agency v. Morstein*, —— U.S. ——, 117 S.Ct. 769, 136 L.Ed.2d 715 (1997). In *Morstein*, the Eleventh Circuit found that the plaintiff's claims against an independent insurance agent and his agency were not preempted under ERISA, since the independent agent and his agency were non-ERISA entities. *Id.* at 722. In the present case, Provident is an ERISA fiduciary, and Smyth was acting as Provident's agent, not as an independent agent. Under ERISA, therefore, Stoudemire's claim of fraudulent inducement against the Defendants is preempted. *See Engelhardt v. Paul Revere Life Ins. Co.*, 139 F.3d 1346, 1352 (11th Cir.1998).

■ Count II of Stoudemire's Complaint states a claim for breach of contract—bad faith failure to pay. The Eleventh Circuit has held that state law claims "relate to" an ERISA plan for preemption purposes "whenever the alleged conduct at issue is intertwined with the refusal to pay benefits." *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir.1997). Under the rule in *Garren*, Stoudemire's state law claim for breach of contract—bad faith failure to pay is "related to" the Policy and is therefore preempted by ERISA.

## V. CONCLUSION

For the reasons discussed above, Stoudemire's state law claims are completely preempted by federal law, giving this court federal question subject matter jurisdiction. Therefore, the Plaintiffs' Motion to Remand is Ordered DENIED.

Plaintiff is given until October 9, 1998 to amend her Complaint, if she wishes to do so, to allege a claim under ERISA.