**Donya Leigh ANDERSON, Plaintiff,**

v.

**UNUMPROVIDENT CORPORATION, Defendant.**

No. CIV.A. 01–D–894–N.

United States District Court,
M.D. Alabama,
Northern Division.

Nov. 7, 2002.

Jonathan H. Waller, Miles Clayborn Williams, Thomas O. Sinclair, Campbell, Waller & Poer LLC, Birmingham, AL, for Plaintiff.

Christopher A. Bottcher, James S. Williams, Kaye K. Houser, Kristen S. Cross, Stephen R. Geisler, Sirote & Permutt, P.C., Birmingham, AL, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

DE MENT, Senior District Judge.

Before the court is Defendant Unum-Provident Corporation's Renewed Motion To Dismiss And Strike, filed May 30, 2002, in which Defendant argues that Plaintiff's state law claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1462.[1] (Doc. No. 23.) Plaintiff

---

1. Because Defendant's Renewed Motion To Dismiss includes matters outside the pleadings, the court construes it as a Motion For Summary Judgment. *See* Fed.R.Civ.P. 12(b). The court's Order dated June 19, 2002, gave the parties notice that the court intended to rely on matters outside the pleadings in determining whether ERISA preempts Plaintiff's state law claims. (Doc. No. 24.) Further, the

Donya Leigh Anderson opposes the Motion. The parties have submitted numerous and ample briefs over the course of several months on the issue of ERISA preemption. (Doc. Nos. 3, 8, 10, 15, 18, 23, 28, 37–38.) After careful consideration of the arguments of the parties, the law, and the record as a whole, the court finds that Defendant's Motion is due to be granted.

## I. STANDARD OF REVIEW

On a motion for summary judgment, the court construes the evidence and makes factual inferences in the light most favorable to the nonmoving party. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment is entered only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). At this juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely determines whether there is more than "some metaphysical doubt" about whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## II. BACKGROUND

Plaintiff voluntarily enrolled in Defendant's long-term disability insurance policy which was offered through her employer, Shaw Industries, Inc. ("Shaw"). (Pl. Aff. ¶¶ 1, 2, 5; Doc. No. 1 (Compl. ¶ 1).) In March 2000, Plaintiff became pregnant, and throughout her pregnancy was insured by Defendant's disability policy. (Pl. Aff. ¶ 3; Doc. No. 1 (Compl. ¶ 4); Doc. No. 10 (Ex. B).) Plaintiff previously had been diagnosed with cervical dysplasia, which required the removal of a portion of her cervix. (Doc. No. 1 (Compl. ¶ 4).) The procedure rendered Plaintiff at risk for complications during her pregnancy. (*Id.*) Plaintiff claims that her physical condition during pregnancy qualified her for benefits under the disability policy purchased from Defendant. (*Id.*) In this vein, she submitted a claim for long-term disability benefits on June 5, 2000. (Doc No. 10 (Ex. B).)

On June 23, 2000, Defendant notified Plaintiff that it was denying her request for disability benefits, having determined that she was not "disabled" according to the terms of the policy. (Doc. No. 1 (Compl. ¶ 5); Doc. No. 10 (Exs. C, E).) Plaintiff requested reconsideration several times and submitted additional information to Defendant in support of her claim. (Doc. No. 1 (Compl. ¶ 6); Doc. No. 10 (Exs. E, F); Doc. No. 15 (Exs. E, F).) Her efforts proved unsuccessful, however, as Defendant stood firm in its belief that Plaintiff was not entitled to disability benefits. (Doc. No. 1 (Compl. ¶ 7); Doc. No. 10 (Ex. G); Doc. No. 15 (Ex. G).)

Plaintiff's next tactic was to file the present action in the Circuit Court of Crenshaw County, Alabama, in June 2001, alleging 1) breach of the insurance contract, 2) bad faith denial of an insurance claim, 3) fraud in the form of misrepresentation of disability benefits, and 4) fraud in the form of suppression and concealment regarding disability benefits under the policy. (Doc. No. 1 (Compl. ¶¶ 8–20).) Defendant removed the matter to the present

court notes that Defendant's accompanying Motion To Strike is directed at Plaintiff's state law claims, extra-contractual damages and demand for a jury trial and, thus, essentially seeks the same relief as the Motion To Dismiss. Because resolution of the ERISA preemption issue subsumes the matters raised in the Motion To Strike, the court need not explicitly rule on the Motion To Strike.

forum contending Plaintiff's claims invoke federal jurisdiction on the basis of the preemptive effect of ERISA. (Doc. No. 1 (Not. of Removal ¶¶ 7–8)); *see* 28 U.S.C. § 1331. Presently at issue is Defendant's Motion For Summary Judgment, *see supra* footnote 1, in which Defendant essentially requests the court to convert Plaintiff's state law allegations into an ERISA claim.

### III. JURISDICTION

Previously, the court found that it may exercise diversity jurisdiction over Plaintiff's state law claims. (Doc. No. 20.) While Plaintiff's Complaint does not state a definite amount of damages, Plaintiff concedes that she intends to seek more than $75,000 in compensatory and punitive damages, and there is no dispute as to the parties' diverse citizenship. (*Id.*) Thus, it is clear that the court has jurisdiction over the present case; rather, the question is whether jurisdiction is based upon 28 U.S.C. § 1331 (federal question jurisdiction) or 28 U.S.C. § 1332(a) (diversity jurisdiction).

### IV. DISCUSSION

■ Defendant argues that ERISA governs the long-term disability insurance policy at issue. On the other hand, Plaintiff contends that the policy is exempt from ERISA coverage under ERISA's "safe harbor" regulation. *See* 29 C.F.R. § 2510.3–1(j). If the policy is an ERISA plan, then Plaintiff's state law claims are preempted, and federal common law will apply to determine whether she is entitled to recovery. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56–57, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

■ Plaintiff's well-pleaded Complaint does not allege a federal question. Therefore, in order for Defendant to show that Plaintiff's claims are preempted by ERISA, it must satisfy the four-part test for ERISA complete preemption estab-

lished by the Eleventh Circuit in *Butero v. Royal Maccabees Life Insurance Co.*, 174 F.3d 1207 (11th Cir.1999). To wit, Defendant must show: 1) that there is a relevant ERISA plan; 2) that Plaintiff has standing to sue under the plan; 3) that Defendant is an ERISA entity; and 4) that the complaint seeks compensatory relief similar to that available under 29 U.S.C. § 1132(a). *Id.* at 1212. Plaintiff does not dispute that the latter three elements of the *Butero* test are satisfied; she objects only to the first element, namely, whether the policy in question is part of a relevant ERISA plan. (Doc. No. 28 (Pl. Br. at 8–10).)

■ Defendant must show five things in order to establish that an ERISA plan governs its relationship with Plaintiff: "(1) a plan, fund, or program (2) [has been] established or maintained (3) by an employer ... (4) for the purpose of providing ... disability ... benefits (5) to participants or their beneficiaries." *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982) (internal citations omitted). Plaintiff takes issue with Defendant's insistence that Shaw "established or maintained" the insurance plan in question. It is her position that Shaw's involvement with the plan did not extend "beyond a mere intent to confer a benefit." *Butero*, 174 F.3d at 1214.

■ The court has recognized that a sufficient showing of employer neutrality obviates the imposition of ERISA's regulatory policies. *See Jones v. Pioneer Life Ins. Co.*, 858 F.Supp. 164, 166 (M.D.Ala. 1994). Indeed, the Department of Labor has drafted a regulation under which employers may seek safe harbor from the strictures of ERISA requirements. 29 C.F.R. § 2510.3–1(j). While an employer's failure to adhere to the safe harbor provision does not necessitate a finding that it "established or maintained" an ERISA plan, its adherence to the provision does preclude such a finding. *See Butero*, 174

F.3d at 1214; *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1133 (1st Cir.1995). As such, the court will turn first to the applicability of the safe harbor provision. *See Thompson v. American Home Assurance Co.*, 95 F.3d 429, 434 (6th Cir.1996).

Under ERISA's safe harbor provision, "the terms 'employee welfare benefit plan' and 'welfare plan' shall not include a group or group-type insurance program offered by an insurer to employees" when the following four elements have been satisfied:

> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation [in] the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3–1(j). Each of these four criteria must be met before an insurance plan can be excluded from ERISA coverage. *See Love v. Fortis Benefits Ins. Co.*, 120 F.Supp.2d 997, 1002 (M.D.Ala. 2000) ("For the safe harbor provision to apply, all four elements must be met.").

Defendant correctly concedes that elements (1), (2) and (4) of the safe harbor

regulation are satisfied. (Doc. No. 36 (Def. Br. at 3).) Plaintiff paid the entirety of the premiums under the policy, and her purchase thereof was strictly voluntary. (Pl. Aff. ¶¶ 4–6; Borie Aff. ¶¶ 7–12.[2]) Moreover, Shaw received no consideration or benefits in connection with making the policy available to Plaintiff and its employees. (Borie Aff. ¶ 10.) Therefore, the focal point of the present discussion is the third element of the regulation, namely whether Shaw endorsed Defendant's long-term disability policy.

The third factor closely parallels the underlying policy of the safe harbor regulation which operates "on the premise that the absence of employer involvement vitiates the necessity for ERISA safeguards." *Johnson*, 63 F.3d at 1133. Employer neutrality is the key, and the employer's involvement must be viewed from the perspective of an objectively reasonable employee. As explained in *Johnson*:

> [A]n employer will be said to have endorsed a program within the purview of the . . . safe harbor regulation if, in light of all the surrounding facts and circumstances, an objectively reasonable employee would conclude on the basis of the employer's actions that the employer had not merely facilitated the program's availability but had exercised control over it or made it appear to be part and parcel of the company's own benefit package.

*Id.* at 1135; *see also Stoudemire v. Provident Life & Accident Ins. Co.*, 24 F.Supp.2d 1252, 1256–57 (M.D.Ala.1998) ("The employer's involvement will be evaluated from the point of view of a reasonable employee."). It is, thus, from this reasonable-employee viewpoint that the court must analyze the evidence.

---

**2.** Tom Borie is the Manager of Human Resources for Shaw at its plant in Andalusia, Alabama. (Borie Aff. ¶ 2.)

In *Butero,* the Eleventh Circuit stated that "[t]he regulation explicitly obliges the employer who seeks its safe harbor to refrain from *any* functions other than permitting the insurer to publicize the program and collecting premiums." 174 F.3d at 1213 (emphasis in original). The *Butero* court found substantial employer involvement, thus rendering the safe harbor provision inapplicable, where an employer: 1) "picked the insurer"; 2) "decided on key terms, such as portability and the amount of coverage"; 3) "deemed certain employees ineligible to participate"; 4) "incorporated the policy terms into the self-described summary plan description for its cafeteria plan"; and 5) "retained the power to alter compensation reduction for tax purposes." *Id.* at 1213–14.

 Applying the foregoing ERISA principles in light of the summary judgment standard, the court finds that Plaintiff's and Defendant's accounts of the material facts are not inconsistent with one another. For the reasons to follow, the court finds that Defendant is entitled to summary judgment as the undisputed facts demonstrate that Shaw endorsed the disability policy in violation of part (3) of the safe harbor regulation. *See Johnson,* 63 F.3d at 1135 n. 3 ("The question of endorsement *vel non* is a mixed question of fact and law. In some cases the evidence will point unerringly in one direction so that a rational factfinder can reach but one conclusion. In those cases, endorsement is a question of law.").

Initially, the court agrees with Plaintiff that many of the functions performed by Shaw indicate its neutrality vis-a-vis the long-term disability policy. Shaw's tasks such as collecting premiums, maintaining a supply of the insurer's claim forms,

completing the employer portion of claim forms, submitting claim forms to Defendant and "keeping track of employee eligibility" all have been deemed merely "administrative" and not violative of the endorsement inquiry of the safe harbor regulation. *Johnson,* 63 F.3d at 1136; *see also Mortier v. Massachusetts Gen. Life Ins. Co.,* 805 F.Supp. 816, 820 (C.D.Cal.1992) (finding that employer who kept file of forms on hand for employees had not established or maintained an ERISA plan). Further, the court recognizes that Shaw does not involve itself in certain substantive aspects of policy administration. (Doc. No. 28 (Pl. Br. at 14–15); Borie Aff. ¶¶ 6, 12.) It is Defendant alone who decides claims eligibility and who hears appeals from denials of claims. (*Id.*) The court, however, finds that this is where Shaw's neutrality ends.

Five reasons lead the court to conclude that Shaw endorses the disability policy at issue. First, although employees are at liberty to chose a long-term disability policy of their own choosing, Shaw singles out Defendant's long-term disability policy as the sole one it offers to its hourly employees. (Gale Aff. ¶ 3; Thornton Dep. at 156–57, 172.) The employer's selection of the insurer, while not necessarily dispositive, *see Butero,* 174 F.3d at 1213 n. 4, is one factor which can weigh against a finding of safe harbor protection. Second, there is evidence that Shaw played a role in the selection of a key term of the insurance policy. The undisputed evidence reveals that Shaw participated in the decision to change the method by which premiums were assessed from a flat rate to an "age-graded" rate whereby rates correlate with the age of the insured. (Thornton Dep. at 18, 20–21, 181.)[3] Namely, Shaw con-

---

**3.** Anita Thornton is the Manager of Benefits at Shaw's corporate headquarters in Dalton, Georgia, and her deposition testimony was submitted in the last round of evidence filed

with the court. (Thornton Dep. at 11–12, 126.) Thornton's testimony has proved the most helpful on the ERISA preemption ques-

curred in Defendant's recommendation to change the rate in order to avoid a "significant increase" in the flat rate. (*Id.* at 22–23.) The court finds that Shaw's involvement with the selection of the method for assessing premiums was not insignificant. In other words, Defendant did not act independently in changing the rate, and the court believes that Shaw's entanglement in the discussions regarding the rate change and Shaw's approval thereof indicate term selection within the meaning of *Butero. See* 174 F.3d at 1213. Third, contrary to Plaintiff's assertions, the court finds that there are restrictions on employee eligibility. *See id.* Plaintiff avers that all hourly employees can participate in the optional long-term disability plan, but Plaintiff's argument ignores the fact that eligibility is limited to those hourly employees who have been employed for at least 90 days. (Thornton Dep. at 153, 157–58.) At least one court has held that an employer establishes participation criteria when it excludes probationary employees and limits employee enrollment to those who have been employed more than thirty days. *See Brundage–Peterson v. Compcare Health Services Ins. Corp.,* 877 F.2d 509, 510–11 (7th Cir.1989).

Fourth, the cover sheet for the policy documents which are provided to Shaw's employees when they apply for the optional long-term disability policy bears a 3″ × 7″ Shaw logo with no mention of Defendant. (Doc. No. 37, (Ex. 2, Bates Stamp Nos. 45–47); Thornton Dep. at 96.) The court finds that an employee reasonably could conclude based on the prominent logo that Shaw vouched for the entire brochure and for the policy. *See, e.g., Johnson,* 63 F.3d at 1137.

■ Fifth, a finding of endorsement may be proper where the employer is named as the plan administrator and "where the employer provides a summary plan description that specifically refers to ERISA in laying out the employees' rights under the policy or that explicitly states that the plan is governed by ERISA." *Thompson,* 95 F.3d at 437. When the policy documents contain such indicia of ERISA, "the employee is entitled to presume that the employer's action indicate involvement sufficient to bring the plan within the ERISA framework." *Id.* at 437 (citing a number of factors that it considered important in arriving at its decision that employer did not endorse plan, including absence of any mention in policy documentation of ERISA). Other courts as well have given substantial weight to the presence of specific references to ERISA. *See Wickman v. Northwestern Nat'l Ins. Co.,* 908 F.2d 1077, 1083 (1st Cir.1990); *Kanne v. Connecticut Gen. Life Ins. Co.,* 867 F.2d 489, 493 (9th Cir.1988) (where employer, distributed "plan brochure" identifying policy as an ERISA plan, safe harbor regulations were inapplicable); *Edwards v. Prudential Ins. Co. of America,* 213 F.Supp.2d 1376, 1387 n. 11 (S.D.Fla. 2002) ("Were the Court to choose one factor which if evidenced, is dispositive of the endorsement inquiry, specific reference to ERISA in the relevant plan would surely be one of the finalists."); *Elliott v. Lockheed Martin Energy Sys., Inc.,* 61 F.Supp.2d 745, 753 (E.D.Tenn.1999) (finding that employer "clearly endorsed the Plan at issue" where the employee-provided summary plan description "contain[ed] an entire page that specifically refer[red]

---

tion. Prior to the filing of Thornton's deposition, the evidence consisted primarily of non-specific allegations. For example, the affidavit of a UnumProvident representative, Jon C. Gale, contained an averment that Shaw "selected the terms of the policy." (Gale Aff.

¶ 3.) Gale, however, gave no indication as to what terms Shaw selected, and, thus, the court could not conclude on the basis of the affidavit that Shaw "decided on *key* terms" of the policy. *Butero,* 174 F.3d at 1213 (emphasis added).

to ERISA in explaining the employee's rights under the policy").

Here, the disability policy documents provided to Shaw's enrollees contain a four-page section entitled "ERISA SUMMARY PLAN DESCRIPTION." This section names Shaw as the plan administrator and gives Shaw's address and telephone number as the plan administrator's contact information. (Doc. No. 37 (Ex. 2, Bates Stamp No. 00067).) It directs the insured to contact the plan administrator regarding any questions about the policy. (*Id.* (Bates Stamp No. 00069).) The ERISA section also identifies Shaw as the agent for legal service of process on the plan. (*Id.* (Bates Stamp No. 00067).) Additionally, the summary plan description explains that the insured is "entitled to certain rights and protections under [ERISA]" and outlines those rights. (*Id.* (Bates Stamp No. 00069).)

Plaintiff attempts to minimize the significance of the ERISA references by pointing to Thornton's deposition testimony. (Doc. No. 38 (Pl. Br. at 1, 3).) According to Thornton, Shaw's "position" is that the policy is not governed by ERISA. (Thornton Dep. at 188.) Further, Plaintiff points out that, as a result of the controversy in this lawsuit over the applicability of ERISA, Shaw has requested Defendant to remove the ERISA section, but the deletion has not yet occurred. (Thornton Dep. at 188, 204–07; Doc. No. 38 (Ex. A).) The court finds that Shaw's belief and attempts to remove the ERISA language from the policy documents have little, if any, bearing on the endorsement inquiry in the present case when one remembers that it is the vantage point of the employee, not the employer, which is controlling. *See Johnson,* 63 F.3d at 1137 n. 5 (Endorsement inquiry "turns on the employer's activities, not its intentions.").

■ Moreover, the court finds that Plaintiff's personal belief that Shaw did not "endorse" the policy at issue cannot bring the policy within ERISA's safe harbor regulation. (Pl.Aff. ¶ 6.) Plaintiff's subjective belief is not at issue; rather the inquiry is whether based on the objective circumstances, an *objectively reasonable* employee would have concluded that Shaw endorsed the policy. *See Stoudemire,* 24 F.Supp.2d at 1257–58 (Plaintiff "may not have personally known that [the employer] endorsed the Policy," but facts demonstrated that a "reasonable employee would have known ... that [the employer] endorsed the policy.").

In light of these facts, the court finds that Shaw's activities, viewed together, rise to the level of an endorsement and, thus, transcend the boundaries of the safe harbor regulation. Therefore, the court finds that the policy is not exempt from ERISA coverage.

The court's inquiry is not over. The court must decide whether the policy otherwise qualifies as an employee welfare benefit plan under the standard set forth in *Donovan, supra,* at page 1275. *See* 688 F.2d at 1371; *see also Butero,* 174 F.3d at 1214. "In determining whether a plan ... [exists,] a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Id.* at 1373. If a plan exists, ERISA applies if Shaw established or maintained the plan with the intent of providing benefits to its employees. *See Butero,* 174 F.3d at 1213.

■ Here, there is no serious dispute that the intended benefits are the proceeds of the long-term disability insurance policy, that the intended beneficiaries are the employees of Shaw who have purchased a policy, that the source of financing is the participating employee, and that the procedure to apply for and collect benefits is

outlined in the insurance policy. Further, the court finds that it is clear that Shaw contracted with Defendant for the purpose of providing long-term disability benefits to its participating employees. Thus, the court finds that, according to the test set forth in *Donovan*, there exists an ERISA plan.

Based on the foregoing, the court finds that all of Plaintiff's state law claims in the Complaint are completely preempted by ERISA. *See* 29 U.S.C. § 1144(a) (Unless a plaintiff's claims fall under an exception not applicable in this case, "the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."); *see also Gilbert v. Alta Health and Life Ins. Co.,* 276 F.3d 1292, 1297 (11th Cir.2001) (ERISA preempts Alabama law claims based on bad faith refusal to pay). Accordingly, the court finds that Defendant's Motion For Summary Judgment is due to be granted. Instead of dismissing the action, however, the court will grant Plaintiff leave to amend her Complaint to state cause(s) of action under ERISA. *See, e.g., Love,* 120 F.Supp.2d at 1004 (granting leave to amend complaint to assert cause of action under ERISA after finding state law causes of action preempted by ERISA); *Stoudemire,* 24 F.Supp.2d at 1259 (same).

## V. ORDER

For the foregoing reasons, it is CONSIDERED and ORDERED that Defendant's Motion For Summary Judgment be and the same is hereby GRANTED as to all Plaintiff's claims in the Complaint.

It is further CONSIDERED and ORDERED that Plaintiff be and the same is hereby GRANTED leave to amend her Complaint to state cause(s) of action under ERISA. Plaintiff is given until November 18, 2002, to amend her Complaint, if desired, to allege a claim under ERISA. If Plaintiff elects not to file an Amended Complaint by said date, the court will dismiss this action with prejudice.